[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 431 
The United States District Court for the Middle District of Alabama has certified to this Court the following questions, acting pursuant to Rule 18, Ala. R. App. P.: "(1) Does Alabama recognize a cause of action for the independent tort of spoliation of evidence against a third party? and (2) If so, what are the elements of that tort?"
 I.
The district court's order certifying its questions provides the following background information: On July 20, 1996, William Smith ("Smith"), his wife Monica Smith, and his two children, Alexandria and Chris, were traveling south on U.S. Highway 231 in Montgomery County in a minivan manufactured by Chrysler Corporation. The minivan was struck by another vehicle, which was being driven by Richard Ferguson. As a result of the collision, Monica Smith suffered injuries that caused her death; the remaining three passengers in the minivan suffered bodily injuries.
At the time of the collision, Smith had in full force and effect an automobile insurance policy with Metropolitan Property and Casualty Insurance Company ("Metropolitan") that included a provision for underinsured-motorist coverage. Smith filed a claim on the Metropolitan policy. Carl Atkinson, a claims adjuster, handled the claim for Metropolitan.
After the accident, Metropolitan took possession of the minivan and arranged to have it delivered to the company's storage facility in Montgomery. Subsequently, Smith began investigating a potential products-liability action against Chrysler Corporation, based on the theory that the minivan in which his wife was killed was defective. On four separate occasions, Smith informed Atkinson and Metropolitan that he intended to bring an action against Chrysler and requested that they preserve the minivan for further inspection. On each occasion, Atkinson agreed to retain the vehicle at the Metropolitan storage facility for Smith's use and inspection. On October 4, 1996, Smith executed a power of attorney to transfer the minivan's title to Metropolitan. At some point thereafter, Smith alleges, Metropolitan, after assuring him the minivan would be preserved for his inspection, negligently allowed the minivan to be destroyed before it could be inspected by Smith or his expert.
Smith sued Ferguson and Metropolitan under the underinsured-motorist provision of his automobile insurance policy. On or about September 26, 1997, in exchange for a pro tanto settlement of $150,000, Smith obtained the circuit court's approval and executed documents releasing Metropolitan and Ferguson. Smith specifically released
 "any and all claims against Met PC and its agents, servants, employees, representatives, officers, directors, shareholders and board members, except, `any potential claim that Plaintiffs may have against Metropolitan Property and Casualty Insurance Company and any other person or entity for the independent tort of evidence spoliation (i.e., spoliation of evidence) based on the destruction of the accident vehicle . . . . '"
On July 17, 1998, Smith sued Atkinson and Metropolitan (hereinafter those defendants will be referred to together as "Metropolitan") in the Montgomery Circuit Court. The defendants removed the case to the United States District Court for the Middle District of Alabama, on the basis of diversity jurisdiction. Relying on the pro *Page 432 
tanto release, the district court dismissed all claims against the defendants except Smith's potential cause of action for the independent tort of evidence spoliation, which was expressly reserved in the release.[1]
 II.
The district court's certified questions require us to decide whether Alabama recognizes a cause of action for an independent tort of evidence spoliation. This Court has refused to recognize such a cause of action when the spoliator was a defendant in an action — that included a tort claim other than the alleged spoliation — filed by a plaintiff whose evidence was lost or destroyed. See Christian v. Kenneth Chandler Constr. Co.,658 So.2d 408, 413 (Ala. 1995). Under the facts of this case, however, the question whether a remedy exists for one whose evidence was lost or destroyed through the acts of a third party (i.e., a party not alleged to have committed the underlying tort as to which the lost or destroyed evidence related) is squarely before us.
The Supreme Court of Illinois has written: "Courts have long afforded redress for the destruction of evidence and, in our opinion, traditional remedies adequately address the problem presented in this case. An action for negligent spoliation can be stated under existing negligence law without creating a new tort."Boyd v. Travelers Ins. Co., 166 Ill.2d 188, 193, 652 N.E.2d 267,270, 209 Ill. Dec. 727, 730 (1995). We agree with the majority of states that have resolved this issue and conclude that general principles of Alabama law afford a plaintiff an adequate remedy. Therefore, we see no need to recognize a new cause of action for spoliation of evidence.[2] We hereby recognize a claim against a third party for spoliation of evidence, under the traditional doctrine of negligence; but in regard to such a claim, we recognize that the burden of proof will be shifted from where it is in the ordinary negligence case.
 III.
As in all negligence actions, the plaintiff in a third-party spoliation case must show a duty to a foreseeable plaintiff, a breach of that duty, proximate causation, and damage. CrowneInvs., Inc. v. Bryant, 638 So.2d 873, 878 (Ala. 1994). We announce today a three-part test for determining when a third party can be held liable for negligent spoliation of evidence. In addition to proving a duty, a breach, proximate cause, and damage, the plaintiff in a third-party spoliation case must also show: (1) that the defendant spoliator had actual knowledge of pending or potential litigation; (2) that a duty was imposed upon the defendant through a voluntary undertaking, an agreement, or a specific request; and (3) that the missing evidence was vital to the plaintiff's pending or potential action. Once all three of these elements are established, there arises a *Page 433 
rebuttable presumption that but for the fact of the spoliation of evidence the plaintiff would have recovered in the pending or potential litigation; the defendant must overcome that rebuttable presumption or else be liable for damages.
 A. Duty
Although there is no general duty to preserve evidence, "Alabama clearly recognizes the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith." Dailey v. City of Birmingham,378 So.2d 728, 729 (Ala. 1979).[3] When a third party has knowledge of a pending or potential lawsuit and accepts responsibility for evidence that would be used in that lawsuit, it should be held liable for damage resulting from the loss or destruction of that evidence.
A California District Court of Appeal has clarified the duty element of California's tort of negligent spoliation, in Johnsonv. United Services Automobile Association, 67 Cal.App.4th 626,79 Cal.Rptr.2d 234 (Dist. Ct. App. 1998), and, although we decline to adopt California's negligent-spoliation tort in its entirety, we are persuaded by that court's rationale for the method by which the plaintiff in a negligent-spoliation case is to establish the existence of a duty on the part of the defendant. In addition to the voluntary assumption of a duty, mentioned above, the Johnson court recognized two additional ways a duty could be imposed upon a third party:
 "[A] duty in a third-party negligent spoliation case can be created by the spoliator voluntarily undertaking to preserve the evidence and a plaintiff reasonably and detrimentally relying thereon. . . ; by an agreement to preserve between the spoliator and the plaintiff. . . ; or by a specific request to the spoliator to preserve a particular item. . . . "
67 Cal.App.4th at 635, 79 Cal.Rptr.2d at 239 (citations omitted). We also agree with Johnson that a third party's constructive notice of a pending or potential action is not sufficient to force upon the third party the duty to preserve evidence. Id., 67 Cal.App.4th at 635, 79 Cal.Rptr.2d at 240. "Limiting the usual duty in third-party negligent spoliation to an agreement to preserve, or a voluntary undertaking with reasonable and detrimental reliance, or a specific request, ensures that such a spoliator has acted wrongfully in a specifically identified way." Id., 67 Cal.App.4th at 637, 79 Cal.Rptr.2d at 241.
Metropolitan argues that imposing on a third party a duty to preserve evidence could result in wasteful and unnecessary record-and evidence-retention practices.[4] We disagree. If the third party does not wish to take responsibility for evidence, it can decline the responsibility, shifting the risk of loss back to the plaintiff. "The specific request to preserve must be accompanied by an offer to pay the cost or otherwise bear the burden of preserving. We do not think a tort duty to preserve should be created simply by someone specifically requesting a third party to preserve something. Preservation may entail significant burdens." Id., 67 Cal.App.4th at 638, 79 Cal.Rptr.2d at 241. In this case for example, assuming the salvage value of the minivan to be $1,000, Metropolitan could have settled Smith's underinsured-motorist claim for $149,000 and the wrecked *Page 434 
minivan, instead of $150,000. Smith would have had his evidence, and Metropolitan would have received the salvage value of the vehicle.
 B. Breach
For the purpose of answering these certified questions, we assume that a duty of care was owed to Smith and that the duty was breached by the destruction of the minivan. However, absent the existence of such a duty, Smith would have no cause of action for spoliation.
 C. Proximate Cause
Not every piece of lost or destroyed evidence should lead to a cause of action for negligent spoliation. Where the destruction or loss of evidence defeats any chance of the plaintiff's recovering in the underlying action, we conclude that the plaintiff deserves recourse for such a loss. Therefore, under a claim for negligent spoliation, the defendant's breach must be the proximate cause of the plaintiff's inability to file, or to win, the underlying lawsuit. Other courts that have recognized spoliation within the context of traditional causes of action have required a plaintiff to show that the "defendant's loss or destruction of the evidence caused the plaintiff to be unable to prove an otherwise valid, underlying cause of action." Boyd v.Travelers Ins. Co., supra, 166 Ill.2d at 197, 652 N.E.2d at 272, 209 Ill. Dec. at 731. In our opinion, the "otherwise valid" language places too heavy a burden on the plaintiff. Without the lost or destroyed evidence, the plaintiff cannot show that the underlying claim was valid. The Appellate Court of Illinois, inPetrik v. Monarch Printing Corp., 150 Ill. App.3d 248, 264,501 N.E.2d 1312, 1322, 103 Ill. Dec. 774, 784 (1986), referring to this language, found that "[s]uch a showing would be nearly impossible because judges or juries cannot evaluate the value of evidence that they cannot see." Therefore, we conclude that, in order for a plaintiff to show proximate cause, the trier of fact must determine that the lost or destroyed evidence was so important to the plaintiff's claim in the underlying action that without that evidence the claim did not survive or would not have survived a motion for summary judgment under Rule 56, Ala.R.Civ.P. Metropolitan argues that a plaintiff, in order to be able to file an action alleging spoliation of evidence against a third party, must first file an action pursuing the underlying cause of action and be denied a recovery in that underlying action. We disagree. If we use the summary-judgment standard as a guide, there will be no need for a plaintiff to waste valuable judicial resources by filing a futile complaint and risking sanctions for filing frivolous litigation. The plaintiff can rely upon either a copy of a judgment against him in an underlying action or upon a showing that, without the lost or destroyed evidence, a summary judgment would have been entered for the defendant in the underlying action.
For those cases hinging upon one particular piece of evidence, the loss of that evidence through the tortious acts of a third party adds an additional injury to an already-injured plaintiff by eliminating his opportunity to seek a remedy against the initial tortfeasor. Smith alleges that Chrysler defectively designed a product and that the defect in that product caused the death of his wife, but that because of Metropolitan's alleged actions, he will be unable to pursue any claims against Chrysler. The fact that Metropolitan is a third party should not deprive Smith of his day in court.
Smith has not filed an action against Chrysler, apparently because Metropolitan allowed the destruction of the minivan that Smith contends was defective. In Alabama, a products-liability claim relating to a defective automobile is properly disposed of on a motion for summary judgment if the automobile in question is not available and the plaintiff has no other means of proving the alleged defect. See Capitol Chevrolet, Inc. v. Smedley,614 So.2d 439 (Ala. 1993). "Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a *Page 435 
defect in the product must be affirmatively shown." Townsend v.General Motors Corp., 642 So.2d 411, 415 (Ala. 1994). Therefore, Smith must show that if he had filed an action against Chrysler, the spoliation of the minivan by Metropolitan would have been a proper ground for entering a summary judgment against him; such a showing would constitute a showing that the lost or destroyed evidence was "vital" to his claim and that its loss or destruction was actionable under the theory of negligent spoliation.
Once a plaintiff has established that the third party had knowledge of the underlying action or potential action, that the third party assumed control over the evidence, and that the lost or destroyed evidence was "vital" to his claim in the underlying action or potential action, a rebuttable presumption arises in favor of the plaintiff. Our treatment here of the effect of spoliation is similar to the rationale set forth in a dissenting opinion in a case involving alleged spoliation by an adverse party in an action presenting a tort claim other than the spoliation,Alabama Power Co. v. Murray,751 So.2d 494, 504 (Ala. 1999) (Lyons, J., dissenting):
 "`[D]estruction of potentially relevant evidence obviously occurs along a continuum of fault — ranging from innocence through the degrees of negligence to intentionality.'. . . A burden-shifting instruction in the case of a merely negligent loss would not require the innocent party to suffer the consequences resulting from the fact that his or her burden of proof has been made greater by the negligence of the adversary, and, at the same time, it would not impose an excessively harsh sanction upon a merely negligent party."
This burden-shift derives from the rationale set forth by the United States Court of Appeals for the Sixth Circuit in Welsh v.United States, 844 F.2d 1239, 1248 (6th Cir. 1988). Although the burden-shift adopted by the court in Welsh involved spoliation by a party to the original tort rather than by a third party, its reasoning remains sound in this context:
 "Creating this rebuttable presumption occupies a middle ground — it neither simply condones the defendant's negligent spoliation of evidence at the plaintiff's expense nor imposes an unduly harsh and absolute liability upon a merely negligent party. Instead, this approach merely selects which of two parties — the innocent or the negligent — will bear the onus of proving a fact whose existence or nonexistence was placed in greater doubt by the negligent party."
Id. at 1249 (citation omitted).
The rebuttable presumption we adopt for use in third-party spoliation cases is "[a] presumption affecting the burden of proof by imposing upon the party against whom it operates the burden of proving the nonexistence of the presumed fact." Rule 301(b)(2), Ala. R. Evid.; see Charles W. Gamble, McElroy's Alabama Evidence
§ 451.05(a) (5th ed. 1996). The presumed fact is that the plaintiff would have prevailed in the underlying action but for the loss or destruction of the evidence by the third-party spoliator. The third party can overcome the presumption by producing evidence showing that the plaintiff would not have prevailed in the underlying action even if the lost or destroyed evidence had been available. In this present case, if Smith establishes a prima facie case of negligent spoliation, it will be presumed that he would have prevailed in a products-liability action against Chrysler. If that presumption is in place, Metropolitan will have the burden of proving that Smith would not have prevailed on the merits of his products-liability action against Chrysler even if the minivan had not been destroyed.
To illustrate further, assume that the plaintiff in a products-liability action alleges that the front wheel of an automobile separated from the vehicle during operation and that the separation caused a serious accident. Further assume that the garage to which the vehicle was towed was *Page 436 
given notice of a pending products-liability action against the manufacturer of the vehicle and voluntarily assumed responsibility for the vehicle, as well as for the separated wheel; and that before the vehicle could be inspected the garage, through inadvertence, sold the vehicle and the wheel for salvage, destroying all relevant evidence and making it certain that the products-liability claim could not survive a summary-judgment motion. In a negligent-spoliation action against the garage, the jury would be instructed to presume that the plaintiff would have prevailed on his products-liability claim against the manufacturer of the vehicle. However, if, for example, the garage produced an eyewitness who testified that the wheel did not separate from the vehicle until after the impact, or that the plaintiff had been driving recklessly before the accident and through his own recklessness had caused the accident, then that testimony would absolve the defendant garage from liability for its spoliation of the evidence if the jury determined that on his products-liability claim the plaintiff would not have prevailed even if the evidence had not been lost or destroyed.
 D. Damages
Just as the plaintiff in a negligent-spoliation action must prove the other three elements of a negligence action (duty, breach, and proximate cause), such a plaintiff also must prove damage. The appropriate measure of damages is difficult to determine in spoliation cases because, without the missing evidence, the likelihood of the plaintiff's prevailing on the merits cannot be precisely determined. "It would seem to be sheer guesswork, even presuming that the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits of the underlying lawsuit."Petrik v. Monarch Printing Corp., supra, 150 Ill. App.3d 248,260, 501 N.E.2d 1312, 1320, 103 Ill. Dec. 774, 782 (1987). However, courts have long recognized the need to remedy a wrong despite the fact that a proper award of damages is difficult to determine.
 "[W]hen a defendant's tortious conduct precludes precise calculation of the amount of damages:
 "`the jury may make a just and reasonable estimate of damage based on relevant data. . . . Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain. Failure to apply it would mean the more grievous the wrong done, the less likelihood there would be of a recovery.
 "`The most elementary conceptions of justice and public policy require [that] the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'"
Id., 150 Ill. App.3d at 261, 501 N.E.2d at 1321, 103 Ill. Dec. at 783, quoting Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251,264-65 (1946). "`The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.'" Story Parchment Co. v. PatersonParchment Paper Co., 282 U.S. 555, 563 (1931), as quoted inAmerican Life Ins. Co. v. Shell, 265 Ala. 306, 311,90 So.2d 719, 723 (1956).
 "To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not, and cannot be the law, though cases may be found where courts have laid down artificial and arbitrary rules which have produced such a result." *Page 437 
American Life Ins. Co. v. Shell, 265 Ala. at 312, 90 So.2d at 723
(again quoting Story Parchment Co. (quoting in turn other cases).
 "But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he cannot show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice."
Id. If the lost or destroyed evidence is vital to a party's claim or defense and the evidence was lost or destroyed through no fault of the innocent party, the wrongdoer should bear the risk.
The burden-shifting approach we adopt today puts us on a different footing from that of the states that have already adopted a remedy for negligent spoliation of evidence. The different options available for determining damages in a spoliation action were reviewed in Holmes v. Amerex Rent-A-Car,710 A.2d 846, 853 (D.C. 1998), where the court observed:
 "One possibility is to award the plaintiff the entire amount of damages that the plaintiff would have received if the original lawsuit had been pursued successfully. 3 Jerome H. Nates, et al., Damages in Tort Actions § 19.33(3) (1997); see Petrik[v. Monarch Printing Corp., 150 Ill. App.3d 248, at 260-61, 501 N.E.2d 1312, at 1320-21, 103 Ill. Dec. 774, at 782-83 (1987)]. The problem with this approach, however, is that it ignores defendant's interest in not providing the plaintiff with a windfall recovery. `If this method is utilized, there is the potential that the plaintiff would benefit more in an instance of spoliation than he might have in the underlying suit.' Nates, supra, § 19.33(3).
 "A second possibility is only to award the plaintiff any costs and fees incurred in pursuit of the original suit. This method, however, fails to adequately "punish" the offending parties or adequately compensate the party who is now apparently unable to pursue its cause of action,' Nates, supra, § 19.33(3). Under this approach, the plaintiff's interest in securing the precluded recovery is ignored.
 "Another possibility, one that attempts a balancing of interests in light of the inherent uncertainties of proof relevant to this tort, was suggested by an Illinois appellate court. This approach requires that damages be discounted to account for uncertainties.
 "`One possible measure of damages, therefore, could be the damages that would have been obtained in the underlying lawsuit, multiplied by the probability that the plaintiff would have won the suit had he had the spoliated evidence.'"
 "Petrik, supra, [150 Ill. App.3d at 260, 501 N.E.2d at 1320, 103 Ill. Dec. at 782].
 "This compromise system would apportion risk between the two parties in an equitable fashion. On the one hand, the plaintiff's interest in recovering the expected but precluded sum is protected because recovery is allowed with lower standards of proof for causation and damages. On the other hand, the defendant's interest in only compensating a plaintiff for actual loss is protected because the recovery will be lessened by the uncertainties involved. Both parties, then, accept some of the risk of windfall or shortage necessitated by the uncertainty inherent in proving this tort.
 "The problem with this method is in the difficulty of `proving what the spoliated evidence would have demonstrated and the extent to which it would have changed the outcome.' Nates, supra, § 19.33(3)."
Holmes, 710 A.2d at 853.
Because the approach we adopt today to this cause of action is distinct from *Page 438 
the approaches adopted by other States, observations such as those made in Holmes fail to consider the additional protection provided to defendants through notice requirements and the element of a rebuttable presumption that would shift the burden of proof in a negligent-spoliation action. Thus, in Alabama, under the approach we adopt today, the risk of a windfall to the plaintiff has been minimized. We decline to gauge damages on the plaintiff's probability of success on the merits. We conclude that without the spoliated evidence, the plaintiff's probability of success is too tenuous a measure to be consistently applied and that any attempt to apply it would constitute pure speculation. Therefore, in determining damages, we reject the use of probability of success as a benchmark, in favor of the use of compensatory damages that would have been awarded on the underlying cause of action, if the defendant cannot overcome the rebuttable presumption.
Any punitive damages that would have been rendered against the original tortfeasor in the underlying litigation should not be included in the plaintiff's recovery for negligent spoliation. It would be wholly unjust to punish a merely negligent party by imposing punitive damages for which the tortfeasor in the underlying claim would have been liable. "Punitive damages are not awarded because the injured party is entitled to them as a matter of right; they are awarded as a punishment to the wrongdoer and to deter him and others in the same or similar situation from such wrongdoing in the future." City Bank of Alabama v. Eskridge,521 So.2d 931, 933 (Ala. 1988). However, if the spoliator is found to have acted willfully or wantonly in the destruction of the evidence, then punitive damages can be levied against the spoliator in an amount adequate to punish the spoliator for its misconduct and to deter others in similar situations.
 IV. Conclusion
Jury charges that presume missing evidence weighs against the spoliator, and discovery sanctions, both of which are available when spoliation is charged against an opposing party, are not available to remedy the injustice caused by spoliation when the spoliator is a third party. However, "`[t]he most elementary conceptions of justice and public policy require [that] the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" Petrik, 150 Ill. App.3d at 261-62,501 N.E.2d at 1321, 103 Ill. Dec. at 783, quoting Bigelow v. RKO RadioPictures, Inc., 327 U.S. 251, 265 (1946). Thus, the risk associated with the loss or destruction of evidence entrusted to a third party must be borne by the third party. When a third party deprives another of his day in court, through tortious destruction of indispensable evidence, that third party commits a wrong; that wrong deserves a remedy, and the fact that damages will be difficult to determine should not preclude a recovery. Therefore, we hold that liability may be imposed on a third party liable for negligent spoliation of evidence, based upon general principles of Alabama law and under the procedures for establishing such liability that we have established in this opinion.
 QUESTIONS ANSWERED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, JOHNSTONE, and ENGLAND, JJ., concur.
BROWN, J., concurs in the result.
SEE, J., dissents.
[1] We simply respond to the district court's questions and leave for that court the issue whether Smith's complaint states a claim against the defendants.
[2] Other states have held that their existing law provided ample remedies. See Wilson v. Beloit Corp., 921 F.2d 765 (8th Cir. 1990) (applying Arkansas law); Edwards v. Louisville LadderCo., 796 F. Supp. 966 (W.D.La. 1992) (applying Louisiana law); LaRaia v. Superior Court, 150 Ariz. 118, 722 P.2d 286 (1986);Gardner v. Blackston, 185 Ga. App. 754, 365 S.E.2d 545 (Ariz. 1988); Petrik v. Monarch Printing Corp., 150 Ill. App.3d 248, 103 Ill. Dec. 744, 501 N.E.2d 1312 (1986), appeal denied, 114 Ill. Dec. 424, 508 N.E.2d 735 (1987); Murphy v. Target Products,580 N.E.2d 687 (Ind.App. 1991); Koplin v. Rosel Well Perforators,Inc., 241 Kan. 206, 734 P.2d 1177 (1987); Miller v. MontgomeryCounty, 64 Md. App. 202, 494 A.2d 761, cert. denied, 304 Md. 299,498 A.2d 1185 (1985); Panich v. Iron Wood Products Corp.,179 Mich. App. 136, 445 N.W.2d 795 (1989); Federated Mut. Ins. Co. v.Litchfield Precision Components, Inc., 456 N.W.2d 434 (Minn. 1990); Baugher v. Gates Rubber Co., 863 S.W.2d 905 (Mo.App. 1993); Weigl v. Quincy Specialties Co., 158 Misc.2d 753,601 N.Y.S.2d 774 (Sup.Ct. 1993); Brewer v. Dowling, 862 S.W.2d 156
(Tex.App. 1993).
[3] This Court has held that this principle applies to insurance companies and their agents. Palomar Ins. Corp. v. Guthrie,583 So.2d 1304, 1306 (Ala. 1991) (involving a jury's finding that an insurance agent had assumed a duty to notify an insured of a policy's renewal and lapse dates).
[4] See, e.g., Temple Community Hosp. v. Superior Court, 20 Cal.4th 464,476, 976 P.2d 223, 232, 84 Cal.Rptr.2d 852, 861 (1999) ("We believe the broad threat of potential liability, including that for punitive damages, might well cause numerous persons and enterprises to undertake wasteful and unnecessary record and evidence retention practices.")